IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v.  ) | Criminal Action |
| ) | No.  04-05025-01-CR-SW-DW |
| GLENN H. HARLOW, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review.  This matter comes before the Court on defendant's Motion to Suppress Evidence.  The government has responded.

Defendant asserts that there was not reasonable suspicion of criminal activity sufficient to justify a stop and frisk.  A hearing was held before the undersigned on April 25, 2005.  Defendant was represented by counsel, Jason Coatney.   Special Assistant United States Attorney Angela C. Hasty  appeared for the government.

It is defendant's contention that the officer in this case did not have a reasonable suspicion, based on specific and articulable facts, that he was armed and dangerous to the officer or others, in violation of Terry v. Ohio, 392 U.S. 1 (1968).

The government called Officer Matt Shuster of the Mt. Vernon Police Department.  He testified that he had previously had contact with defendant regarding him illegally setting off fireworks.  On July 5, 2004, he heard fireworks and went to the location where he heard the noise. He and Officer Hubert  arrived and witnessed defendant outside, saw debris, and saw smoke in the

area. He confronted defendant, who first denied having any involvement, and then after about thirty seconds of conversation, admitted to setting off fireworks. They asked if he had any other fireworks in his possession. At this time, the officer's attention was drawn to a mass or bulge in defendant's right front pocket. Defendant denied having any more fireworks, and placed his hand over the front pocket. The officer asked what was in defendant's pocket, and asked if he could pat him down. Defendant said that he could not, and took a step backwards. The officer thought, at that time, that defendant might have fireworks or illegal drugs in his pocket. He told defendant that whatever he had, to hand it over, and the officer would just issue a summons. Officer Shuster observed that defendant's grip went to his pocket and his hand was firming up over the mass. He repeated his demand that defendant hand over whatever was in his pocket. Defendant then placed his hand in his pocket and began fidgeting with whatever it was. At that time, the officer did not know what it was, but his alert level went up. He then heard a clicking noise like metal hitting together, emanating from defendant's pocket. At that point, Officer Shuster placed his hand on his revolver. He believed that defendant had some type of weapon in his pocket. He told him at least four or five times to remove whatever he had from his pocket. Another officer who was there told defendant the same thing. Officer Shuster testified that he feared for his safety, and explained that the situation had changed from fairly relaxed to highly intense. Defendant then asked why he couldn't take the item out of his pocket and place it in the trash. The officer told him that he just need to remove the item from his pocket. Defendant asked whether, if he did so, the officer would swear he wouldn't take him to jail. He just told him again to remove the item from his pocket. The officer believed it was a weapon because of the intensity of the incident. Officer Hubert had his weapon drawn, and he had his hand on his. As defendant started to pull the item slowly out of his pocket, Officer Shuster saw the pearl grips of a handgun. Defendant was immediately arrested, placed in handcuffs,

and frisked.

On cross examination, Officer Shuster testified that he had had other contact with defendant regarding the illegal use of fireworks in the city, around the Fourth of July. On those previous occasions, he never issued a summons. He asked defendant if he had any more fireworks because he thought he had been adequately warned on those previous occasions. At first, he believed defendant had some sort of weapon or contraband in his pocket. When he heard the clicking metal sound, his suspicion went from some type of weaponry to a firearm. Officer Shuster admitted that he had previously testified that he did not know for a fact that it was a firearm until defendant pulled it out of his pocket. His testimony should have been that he did not confirm it was a weapon until defendant pulled it from his pocket. He had already decided that he would issue defendant a summons for illegally setting off fireworks. He did not frisk defendant because when he mentioned this to him, defendant stepped back, took a defensive stance, and the level of intensity increased drastically. He did not feel it was safe to frisk defendant at that time, given that the situation had escalated to the point that they had him at gunpoint.

Defendant contends that the officers did not have reasonable suspicion of criminal activity sufficient to justify the stop and frisk. It is the government's position that the officers were responding to a crime that had already been committed when they encountered defendant, and that his actions were sufficient to establish reasonable suspicion that he was armed.

Law enforcement officers are entitled to stop and briefly detain an individual for investigative purposes if there is reasonable suspicion that criminal activity may be afoot. Terry v. Ohio, 392 U.S. 1, 27 (1968); United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994)(en banc), cert. denied, 514 U.S. 1113 (1995). This suspicion must be more than just an "unparticularized suspicion or 'hunch.'" Terry, 392 U.S. at 27. Rather, "the police officer must be able to point to

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21.

In the instant case, there is no dispute that the defendant admitted to illegally setting off fireworks. Therefore, it is apparent that the officers' initial encounter with him fell within the purview of a legal Terry stop. As the conversation progressed, Officer Shuster's testimony indicated that his suspicions began to elevate when he noticed a suspicious bulge in defendant's right front pants pocket, and when defendant would not identify the item and would not remove it from his pocket. His suspicions grew when defendant placed his hand in his pocket, and then stepped back when the officer asked him about conducting a pat down search. He became more concerned when he heard a sound like metal clicking inside defendant's pocket. Under the totality of the circumstances, it can be concluded that Officer Shuster's belief that defendant had a weapon was sufficient to provide him with reasonable suspicion to frisk defendant. Terry, 392 U.S. at 28.

Viewing the situation through the officer's eyes, there was reasonable suspicion of criminal activity to support his actions. The Court is satisfied that the testimony established that Officer Shuster supplied particularized facts, from which it could be rationally inferred that defendant presented a threat to officer safety. It is obvious, moreover, that once the officer saw the gun, the situation escalated to one in which efforts were necessary to subdue defendant. The evidence indicates that, at that point, the officer had probable cause to arrest defendant, and that his actions in doing so were appropriate. Therefore, there are no grounds for suppression of the evidence.

Having carefully reviewed the testimony and the legal arguments advanced by the parties, the Court finds that it must be recommended that defendant's motion to suppress evidence be denied.

For the foregoing reasons, it is, pursuant to the governing law and in accordance with Local Rule 72.1 of the United States District Court for the Western District of Missouri,

RECOMMENDED that defendant's Motion to Suppress Evidence should be denied.

/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 5/6/05